UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JERMELLE DANIEL O/B/O C.P.D.,** | } |
| **Plaintiff** | } |
| v. | } CASE NO. 2:12-cv-03499-SLB |
| **CAROLYN W. COLVIN,**[1] **Acting Commissioner, Social Security Administration,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Jermelle Daniel o/b/o CPD ["Plaintiff" or "Claimant"] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying her child's application for Supplemental Security Income under the Social Security Act. (Doc 1.)[2] Upon review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security of February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the defendant in this suit. ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Reference to a document number, ["Doc.__"], refers to the number assigned to each document as it is filed in the court's record.

## I. PROCEDURAL HISTORY

Plaintiff initially filed an application for Supplemental Security Income ["SSI"] on behalf of her minor child on January 7, 2009, (R. 65), alleging an onset date of August 1, 2007, (R. 101).[3] The initial application was denied by the state agency on February 23, 2009, (R. 65), and plaintiff requested a hearing before an Administrative Law Judge ["ALJ"] on May 1, 2009, (R. 71). Hearings were held on June 10 and October 26, 2010. (R. 41, 55.) The ALJ issued his decision denying the plaintiff's request for SSI on December 30, 2010. (R. 22.) The Appeals Council denied review of the decision on August 1, 2012, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Following denial of review by the Appeals Council, plaintiff filed an appeal in this court, alleging the ALJ's decision was not based on substantial evidence and that improper legal standards were applied. (Doc. 7 at 1.) The plaintiff requests this court reverse the Commissioner's decision or, alternatively, remand the case for further consideration. (Doc. 7 at 12.)

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one, limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were applied. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

---

[3] Reference to a record number, ["R.__"], refers to the page number in the entire record provided to the court.

(11th Cir. 1983). The court gives deference to factual findings and closely scrutinizes questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

Factual findings, such as the credibility of witnesses and resolution of conflicting statements and testimony are determined by the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1242 (11th Cir. 1983). The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *Id.* at 1239. However, "despite [this] deferential standard for the review of claims… [the] Court must scrutinize [the] record in its entirety to determine the reasonableness of the decision reached." *Lamb v. Bowen*, 847 F.2d at 701 (citing *Bridges v. Bowen*, 815 F.2d 622, 623 (11th Cir. 1987)). Nonetheless, even if the evidence preponderates against the Commissioner's decision, this court must still affirm if the decision is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. Substantial evidence is defined as that which "a reasonable person would accept as adequate to support a conclusion. *Id.*

Conclusions of law made by the Commissioner are closely examined by the court. *Cornelius*, 936 F.2d at 1145. The Commissioner must provide the court with a sufficient basis for determining if the correct legal standards were applied. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The burden is on the claimant to prove disability.[4] *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir.), *cert denied*, 414 U.S. 913 (1973). If a

---

[4] "Disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment expected to result in death or which has lasted or is expected to last for a continuous period of not less than twelve (12) months. 42 U.S.C. §423 (d)(1)(A). A "physical or mental impairment" is a impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical or diagnostic techniques. *Id.* at §423 (d)(3).

claimant proves that he is no longer able to perform his past work, then the burden shifts to the Commissioner to prove that the claimant is capable of engaging in some other type of substantial gainful employment. *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988).

### III. ADMINISTRATIVE REVIEW PROCESS

The Social Security Act and its regulations set out the procedure for determining whether a claimant is eligible for benefits. The claimant first submits an application for benefits to the state agency. The state agency, acting under the authority and supervision of the Commissioner of Health and Human Services, makes the initial disability determination. 42 U.S.C.A. §421(a). If the state agency denies the claimant's application for benefits, the claimant may pursue administrative review of the decision through a three-stage process. First, the state agency is required to review its initial determination *de novo*. 20 C.F.R. § 404.913. Second, if the state agency affirms its initial decision, the claimant may request a hearing before an ALJ within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C.A. § 405(b)(1); 20 C.F.R. § 404.929. Third, the plaintiff may seek review of the ALJ's decision by the Appeals Council. 20 C.F.R. § 404.967. After exhausting the administrative review process, the claimant

may appeal the final decision[5] of the Commissioner to a federal district court. 42 U.S.C.A. § 405(g).[6]

## IV. DISCUSSION

### A. Child Disability

"Federal regulations set forth the process by which the SSA [Social Security Administration] determines if a child is disabled and thereby eligible for disability benefits." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(i) and 20 C.F.R. § 416.906). In determining if a child is disabled and thereby eligible for disability benefits, the courts use a three-step sequential evaluation test. The specific steps are as follows:

---

[5] The Supreme Court has stated that a "final decision" is "a statutorily specified jurisdictional prerequisite" under 42 U.S.C. §405(g). *Weinburger v. Salfi*, 422 U.S. 749, 766 (1975).

[6] Section 405(g), which is the basis for judicial review of the denial of Disability Insurance Benefits under Title II, provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §405(g).

(1) The first step in the process is for the ALJ to determine whether the child is "doing substantial gainful activity." *Id.* (citing 20 C.F.R. §§ 416.924(a), (b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in substantial gainful activity. 20 C.F.R. §§ 416.974, 416.972(a). If the claimant is working and the work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of claimant's medical condition or his age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the individual is not engaging in substantial gainful activity, the analysis proceeds to the next step.

(2) If the child is not engaged in substantial gainful activity, the ALJ is to consider the child's "physical or mental impairment(s)" to determine if the child has "an impairment or combination of impairments that is severe." *Shinn*, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.924(a), (c)). Because a disability counts only as an impairment if it arises out of "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," the diagnosis of whether a child has an impairment is primarily based on medical evidence. *Id.* (citing 20 C.F.R. §§ 416.908, 416.913(a)). However, "non-medical evidence, including the testimony of '[e]ducational personnel' and 'parents' may be used to demonstrate that a child's impairment is severe." *Id.* (citing 20 C.F.R. §§ 416.913(d)(2), (4), 416.924a(a)(2)). If a claimant has a severe impairment(s), the analysis proceeds to the third step.

(3) If the ALJ determines that a child has a severe impairment, he then "assesses whether the impairment 'causes marked and severe functional limitations for the child.'" *Id.* (citing 20 C.F.R. §§ 416.911(b), 416.924(d)). This third evaluation is made according to objective criteria set forth in the Code of Federal Regulations, which contains the "Listing of Impairments" [Listing], which lists medical conditions and organizes them into general classifications. *Id.* (citing 20 C.F.R. §§ 404 app., 416.925(a)). "A child's impairment is recognized as causing 'marked and severe functional limitations' if those limitations 'meet[], medically equal[], or functionally equal[] the [L]istings." *Id* at 1279. (citing 20 C.F.R. §§ 416.925(a), 416.911(b)(1)); *see also* §§ 416.902, 416.924(a). A child who actually suffers from the limitations specified in the Listing for that child's severe impairment "meets" the limitation in the Listing. *Id.* A child who's limitations "are at least of equal medical significance to those of a listed impairment" is deemed to "medically equal" the limitations in the Listings. *Id.* (citing 20 C.F.R. § 416.926(a)(2).

An ALJ can also determine that a child's limitations are "functionally equivalent" to those in the Listings even if the limitations of the child's impairment are not comparable to those specified in the Listings. *Id.* To find functional equivalence, the ALJ assesses the degree that a child's limitations interfere with the child's life activities in regard to six major domains of life: "(i) Acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and

manipulating objects; (v) caring for [one]self; and (vi) health and physical well-being." *Id.* (citing 20 C.F.R. § 416.926a(b)(1)).

The child's impairment will be deemed "'of listing-level severity.' and therefore 'functionally equals the listings,'" if the child's impairment causes "'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." *Id*. (citing 20 C.F.R. § 416.926a(d)). Finally, the ALJ must ensure the impairment meets the duration requirement, which is that the impairment "'be expected to cause death or ... has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Id.* (citing 20 C.F.R. § 416.906).

### B. The ALJ's Decision

The ALJ found that the claimant—a preschooler at the time the application for SSI was filed—was not disabled under § 1614(a)(3)(C) of the Social Security Act. (R. 37.) The ALJ determined at step one that the claimant has not engaged in substantial gainful activity. (R. 25.) At step two, the ALJ determined that claimant suffers from the severe impairment of attention deficit hyperactive disorder (ADHD). *Id.* At the third step, the ALJ determined that claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments. *Id.* The ALJ determined that the claimant had no limitations caused by her impairment in any of the six functional equivalence domains. (R. 30-37.) This court finds substantial evidence supports the ALJ's conclusion that the claimant has not been disabled since January 7, 2009.

### C.     Plaintiff's Contentions

Plaintiff contends that the ALJ did not give proper weight to the opinion provided by plaintiff's treating physician, Dr. Morgan. (Doc. 7 at 5.) Plaintiff argues that the ALJ improperly dismissed Dr. Morgan's indication that plaintiff had "marked" to "extreme" limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, and moving about and manipulating objects. (Doc. 7 at 6). Further, plaintiff argues that if the ALJ truly believed Dr. Morgan's opinion to be inadequate or incomplete, the ALJ should have recontacted Dr. Morgan to investigate the facts rather than dismiss her opinion to the detriment of plaintiff. (Doc. 7 at 9.) Plaintiff argues that because the ALJ did not give proper weight to the plaintiff's treating physician and did not duly investigate the opinion of Dr. Morgan, the ALJ's decision cannot be based upon substantial evidence. (Doc. 7 at 5, 9, 11.) The court has reviewed the record and concludes that the ALJ's decision was based on substantial evidence and proper legal standards.

### D.     Treating Physician's Opinion

A treating physician's medical opinion is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the record as a whole. *See* 20 C.F.R. §416.927(c)(2). However, a treating physician's opinion may be discounted if there is good cause. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). The court has found good cause in instances where the treating physician's opinion was conclusory, not bolstered

by the evidence, or inconsistent with the physician's own medical records. *Phillips v, Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the ALJ gives less weight to a treating physician's opinion, he must clearly articulate his reasons for doing so. *Id.* Failure of the ALJ to clearly articulate the reasons for giving less weight to the opinion of a treating physician is a reversible error. *Lewis*, 125 F.3d at 1440.

Here the ALJ clearly articulated his reasons for giving the opinion of plaintiff's treating physician, Dr. Morgan, less weight. The ALJ stated that Dr. Morgan did not provide a detailed explanation or objective support for her opinion. (R. 29). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3). Dr. Morgan assigned "extreme" limitations to areas of impulsiveness, inattention, and hyperactivity. (R. 223.) This conclusion is supported only by her statement that "By definition, ADHD is attention deficit—impulsive, inattentive, hyperactive." *Id.* But the definition does not incorporate a level of severity. Dr. Morgan's opinion is not supported by an individualized determination, but rather is a generalization of ADHD and its associated symptoms. Such an observation is a conclusory, not a diagnosis supported by medical evidence.

The ALJ also noted that Dr. Morgan's opinion is in conflict with her own treatment records, (R. 29.), which show that a few months after being prescribed medication, claimant's behavior had decidedly improved, she was on the A-B honor roll,

10

and she was "much better" with her medication. (R. 198.) Dr. Morgan's records do not show any additional subjective complaints concerning claimant's behavior until July 15, 2010, when Dr. Morgan referred claimant to a psychologist. (R. 194.) This record of infrequent, subjective complaints and clear improvement while on medications does not support Dr. Morgan's assessment of marked or extreme limitations.

The ALJ also stated that Dr. Morgan's opinion is inconsistent with the evidence as a whole. (R. 29.) "[T]he more consistent an opinion is with the record as a whole, the more weight we will give that opinion." 20 C.F.R. §416.927(c)(4). Patrick Dunne, a licensed professional counselor, evaluated claimant on August 11, 2010 through a clinical interview and testing. (R. 199.) Mr. Dunne stated that claimant's ADHD appeared to be only partly controlled with her current medication regimen and suggested her medication be increased or she be switched to another medication. (R. 206.) Mr. Dunne concluded that academically, claimant appeared to be achieving and functioning in the average range for her age as well as noting that her behavior was not severely disruptive of the learning process in the classroom for her and her peers. (R. 207.) Mr. Dunne's evaluation occurred within a month of Dr. Morgan's medical record from July 15, 2010. (R. 194.) Accordingly, Dr. Morgan's assessment of marked or extreme limitations is not consistent with the evidence as a whole, and is therefore due no significant weight.   L.E. Shehi, M.D., concurred with Mr. Dunne's findings. (R. 207.)

### E. Substantial Evidence

Finally, the court finds that the ALJ's conclusion is supported by substantial evidence, including Dr. Robert Estock's February 2, 2009 childhood disability evaluation in which all six domains of functioning were assessed, (R. 188-192), and Mr. Dunne's evaluation, discussed *supra* (R. 199-207). Dr. Estock was a state agency consulting physician and the regulations designate state agency consultants as experts in Social Security disability evaluation. 20 C.F.R. §416.927(e)(2)(i). Although Dr. Estock did not examine the claimant, he did study her medical records and the available teacher questionnaires in forming his opinion. (R. 189, 192.) "[B]ecause nonexamining sources have no examining or treating relationship with [claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927(c)(3). Dr. Estock explained in his report that in the attending and completing tasks domain, which he assigned a "less than marked" limitation for claimant, that the problem "has been resolved with medications" and that claimant has "no problems in any other domains" and is "functioning at or above grade level." (R. 189.) He based this observation on the plaintiff's own reports to Dr. Morgan that the child improved on medication. (R. 192). "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4). Dr. Estock's opinion is to be accorded additional significance because it is consistent with the rest of the evidence.

The ALJ's findings also are supported by several questionnaires completed by claimant's schoolteachers. "Non-medical evidence, including the testimony of '[e]ducational personnel'… may be used to demonstrate that a child's impairment is severe." *Shinn*, 391 F.3d at 1278. (citing 20 C.F.R. §§ 416.913(d)(2), (4), 416.924a(a)(2)). Claimant's second-grade teacher stated that claimant had no problems in any domain. (R. 133-139.) Claimant's third-grade teacher stated that claimant was able to focus when she was on her medication and that "the days [claimant] did not have her medication, she was a totally different person." (R. 166, 167.) Although plaintiff cites Dr. Morgan's July 15, 2010 record as indicating that claimant's ADHD was not controlled by medication and her condition had instead worsened over time, this is disputed by the statements of claimant's teacher from that year. (Doc. 7 at 8); (R. 224-231). Sylvia Callaway, claimant's fourth-grade teacher, stated that "when [claimant] has her meds, she is a model student" and "when [claimant] has meds, there is no problem." (R. 224, 226.) Callaway made those statements in November 2010, months after plaintiff claims the impairment had worsened. (R. 231.) The statements of claimant's teachers show that her impairment is controlled by medication, but suggested that she does not always take her medication, which led to behavioral problems. (R. 139, 166, 231, 238.) This is substantial evidence that supports the ALJ's conclusion that when claimant takes her medication, her ADHD is controlled. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling"). These responses also validate the ALJ's decision to give little weight to Dr. Morgan's opinion.

The ALJ conducted a comprehensive review of the medical evidence and the opinions of record, and gave a proper explanation for his finding that claimant is not disabled. Substantial evidence supports the ALJ's conclusion that claimant's condition does not meet, medically equal, or functionally equal one of the listed impairments found in the Listings.

## V. CONCLUSION

Based on the reasons stated above, this court is of the opinion that the Commissioner's decision is in accordance with the correct legal standards and supported by substantial evidence. The decision is due to be **AFFIRMED**. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 10th day of March, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE